IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEMETRIOUS BURKS, | Civil Action |
| Plaintiff, | No. 2:21-102 |
| v. | |
| PNC BANK, N.A., | |
| Defendant. | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Demetrious Burks, by undersigned counsel, files this Civil Complaint, and in support states the following:

### I. Jurisdiction

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331, and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Plaintiff has exhausted the administrative remedies set forth under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 962(c)(1), as follows:

   a. On August 23, 2018, he timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation, and cross-filed with the Pennsylvania Human Relations Commission ("PHRC");

   b. On November 9, 2020, the EEOC issued a Notice of Right to Sue.

   c. On March 13, 2020, he timely filed a second charge of discrimination with the EEOC alleging retaliation, and cross-filed with the PHRC;

   d. On January 20, 2021, the EEOC issued a second Notice of Right to sue;

   e. This action is filed within 90 days of receipt of both Notices of Right to Sue; and

1

  f. More than one year has passed since Plaintiff cross-filed with the PHRC.

## II. Parties

3. Plaintiff, Demetrious Burks, is an adult male individual who resides in Allegheny County, Pennsylvania.

4. Defendant, PNC Bank, N.A., is wholly-owned subsidiary of the PNC Financial Services, Group, Inc., with a principal place of business located at 500 First Avenue, Pittsburgh, PA 15219.

5. In 2020, Defendant employed at least 15 employees in 20 or more weeks of the calendar year.

## III. Factual Background

6. Mr. Burks began working for Defendant in or around August 2015 as an Operations Processor.

7. In 2016, Mr. Burks worked the twilight shift under the supervision of Douglas Throckmorton.

8. Mr. Throckmorton frequently and consistently made sexual comments to Mr. Burks and would uninvitedly touch Mr. Burks' arms and massage his shoulders.

9. Mr. Throckmorton repeatedly objectified the bodies of Mr. Burks' coworkers in front of Mr. Burks and other employees.

10. Mr. Burks repeatedly told Mr. Throckmorton that he was uncomfortable and asked him to stop.

11. In April 2017, Mr. Burks was promoted to Operations Analyst II on the recommendation of Throckmorton.

12. However, Mr. Burks was never trained on the duties of the Operations Analyst II

position.

13. Instead, Mr. Burks was required to perform the day-to-day duties of an Operations Work Lead without the title or commensurate pay.

14. On or about May 3, 2017, Mr. Throckmorton hit Mr. Burks' buttocks with a mail container.

15. Mr. Burks then filed an internal complaint with Employee Relations employee Amy Laskody against Mr. Throckmorton for sexual harassment.

16. Patrick Baker, Mr. Burks' immediate supervisor, cautioned against making the complaint, saying they are all "members of the same church," meaning he, Mr. Throckmorton, and Mr. Burks were all gay men.

17. Ms. Laskody assured Mr. Burks that Mr. Throckmorton's actions would be investigated, and that he would be reprimanded.

18. However, Mr. Throckmorton remained Mr. Burks' supervisor and continued verbally and physically harassing Mr. Burks.

19. Ms. Laskody suggested that Mr. Burks switch to the daylight shift to avoid Mr. Throckmorton's harassment.

20. If Mr. Burks switched to the daylight shift, he would lose his shift differential pay, resulting in a decrease in salary.

21. Mr. Baker advised Mr. Burks to put up with the harassment until Mr. Throckmorton's retirement.

22. Mr. Burks repeatedly called Ms. Laskody after reporting the harassment, but she stopped taking his calls, stating that the matter was out of her hands and nothing could be done.

23. Mr. Throckmorton continued to sexually harass Mr. Burks both verbally and

physically.

24. In April 2018, Mr. Burks applied for a promotion to Operations Work Lead in the Lockbox organization.

25. Mr. Burks was already performing the duties of Operations Work Lead without comparable pay.

26. Defendant instead promoted David Wells, a mailroom employee with no experience in Lockbox or OCR production, or experience with clients or accounts, all duties required of an Operations Work Lead.

27. Mr. Throckmorton took part in the decision to promote Mr. Wells over Mr. Burks.

28. Shortly after Mr. Wells was promoted, Mr. Burks applied for a promotion to the position vacated by Mr. Wells, a Work Lead position in the mailroom.

29. On April 23, 2018, Mr. Throckmorton approached Mr. Burks and said, "Are you now ready to play the game?" implying that if Mr. Burks wanted the promotion, he must be open to Mr. Throckmorton's sexual advances.

30. Mr. Burks reported the incident to Mr. Baker, but never received any updates or notice of disciplinary action taken as a result of the complaint.

31. Mr. Burks was denied the Work Lead position, which was instead awarded to Ramon Celis, a mail sorter with no supervisory experience.

32. Both Mr. Wells and Mr. Celis were less qualified than Mr. Burks for the promotions they received.

33. Mr. Baker insinuated to Mr. Burks that Mr. Wells and Mr. Celis had sexual relations with Mr. Throckmorton at a time prior to their promotion by suggesting of the two men that one wears a jock strap for "easy access," and the other was given mono by Mr. Throckmorton.

4

34. Mr. Wells told Mr. Burks that if he wanted to receive promotions, he should take Mr. Wells' approach and "wear knee pads," a euphemism for a sexual act.

35. Mr. Burks was never given a reason why he did not receive either promotion.

36. In April 2018, Mr. Burks made another complaint to Employee Relations regarding Mr. Throckmorton's inappropriate touching and sexual comments.

37. Defendant suspended Mr. Burks from his position from on or about July 10, 2018 to May 2019.

38. Mr. Burks received no documentation as to why he was suspended.

39. Defendant alleges it suspended Mr. Burks for nine months to investigate an alleged verbal altercation between Mr. Burks and Mr. Wells.

40. No corrective action was taken against Mr. Burks as a result of this investigation, and Defendant acknowledges its claims against Mr. Burks related to the alleged altercation were unfounded.

41. While Mr. Burks was suspended, Mr. Throckmorton remained employed with Defendant.

42. Shortly after Mr. Throckmorton retired, Defendant allowed Mr. Burks to return to work.

43. During the nine-month suspension, Mr. Burks was ineligible for incentive pay, reducing his net income by $400-500 each month.

44. Immediately following suspension, Mr. Burks took medical leave assist his recovery from Mr. Throckmorton's sexual harassment.

45. While on medical leave, Defendant changed Mr. Burks' job title to Lockbox Processor Senior.

46. To date, Mr. Burks has never been trained as an Operations Analyst II or Lockbox Processor Senior, nor has he been treated as such for purposes of day-to-day tasks and scheduling.

47. On or about August 26, 2019, Mr. Burks returned to working for Defendant.

48. Mr. Burks continued to be harassed by his colleagues and supervisors, who inappropriately touched him, spread rumors that he got Mr. Throckmorton fired, called him "trouble," and told others to "keep an eye" on him.

49. After returning to work, Mr. Baker informed Mr. Burks that he would now be responsible for the duties of an Operations Work Lead.

50. Mr. Burks was never formally promoted to Operations Work Lead and did not receive a pay increase for performing the duties of Operations Work Lead.

51. Mr. Baker referred to Mr. Burks as a Work Lead to Mr. Burks' colleagues and upper-level managers.

52. On October 16, 2019, Mr. Burks informed Mr. Baker that he no longer wanted to work as a Work Lead without commensurate pay.

53. On October 18, 2019, Mr. O'Sullivan and Ms. Wilson, both managers, threatened Mr. Burks with corrective action if he did not perform the duties of Work Lead.

54. Ms. Wilson was close friends with Mr. Throckmorton and spent a great deal of time with him during non-working hours prior to his retirement.

55. Since July 2020, Mr. Burks has been on medical leave from his position with Defendant.

56. Mr. Burks' medical leave is directly related to the emotional distress and mental health challenges caused and exacerbated by Defendant's treatment of him as set for in this Complaint.

## Count I
## Title VII: Hostile Work Environment

57. Plaintiff incorporates the allegations of Paragraphs 1 through 56 as if fully restated.

58. Mr. Throckmorton, a supervisor, engaged in unwelcome conduct because of Mr. Burks' sex that altered the terms and conditions of his employment.

59. Mr. Throckmorton's conduct was severe and/or pervasive, and would have been offensive to a reasonable person.

60. By failing to prevent and/or correct Mr. Throckmorton's sexual harassment toward Mr. Burks, Defendant created a hostile work environment because of Mr. Burks' sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

61. Defendant's actions toward Mr. Burks were undertaken with malice and/or reckless indifference toward his federally-protected rights.

62. As a direct and proximate result of Defendant's conduct, Mr. Burks has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

## Count II
## Title VII: Quid Pro Quo Sexual Harassment

63. Plaintiff incorporates the allegations of Paragraphs 1 through 62 as if fully restated.

64. After Mr. Burks' was denied one promotion, and had already applied for a second promotion, Mr. Throckmorton threatened Mr. Burks by saying, "Are you now ready to play the game?"

65. Mr. Throckmorton had previously promoted Mr. Burks while Mr. Burks endured his harassment, and before Mr. Burks had complained to Human Resources about the harassment.

66. As such, Mr. Burks' submission to unwelcome sexual advances, and verbal and

physical conduct of a sexual nature was made explicitly and implicitly a term and condition of Mr. Burks' employment and for receiving job benefits such as promotions.

67. Mr. Throckmorton's conduct was severe and/or pervasive, and would have been offensive to a reasonable person.

68. By failing to prevent and/or correct Mr. Throckmorton's sexual harassment toward Mr. Burks, Defendant permitted quid pro quo harassment because of Mr. Burks' sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

69. Defendant's actions toward Mr. Burks were undertaken with malice and/or reckless indifference toward his federally-protected rights.

70. As a direct and proximate result of Defendant's conduct, Mr. Burks has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

### Count III
### Title VII: Retaliation

71. Plaintiff incorporates the allegations of Paragraphs 1 through 70 as if fully restated.

72. Mr. Burks' engagement in protected activity by participating in an EEOC proceeding and/or by reasonably opposing sexual harassment was a but for cause in Defendant's decisions:

   a. to place him on administrative leave for ten months;

   b. not to promote him to the Operations Work Lead position in April 2018;

   c. not to promote him to the Work Lead position in the mailroom in or around April 2018; and

   d. to require him to perform the duties of Operations Work Lead without commensurate pay.

73. As such, Defendant retaliated against Mr. Burks because he engaged in a protected

8

activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

74. Defendant's violations of Title VII were undertaken with malice and/or reckless indifference to Mr. Burks' federally-protected rights under Title VII.

75. As a direct and proximate result of Defendant's actions toward Mr. Burks, he has suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, and like injuries.

### Count IV
### PHRA: Sexual Harassment and Retaliation

76. Plaintiff incorporates the allegations of Paragraphs 1 through 75 as if fully restated.

77. Defendant created a hostile work environment because of Mr. Burks' sex, and retaliated against him, in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(a).

78. As a direct and proximate result of Defendant's violations of the PHRA, Mr. Burks has sustained the injuries and damages, including but not limited to lost wages, emotional distress, loss of reputation, humiliation, and inconvenience.

WHEREFORE, Mr. Burks respectfully requests judgment in his favor and the following relief:

   a. Compensation for the full value of wages Mr. Burks would have received had it not been for Defendant wrongfully suspending him for nine months;

   b. Compensation of backpay for the period of time during which Mr. Burks performed the duties of Operations Work Lead without title or commensurate pay;

   c. Compensatory damages for extreme emotional distress, humiliation, inconvenience, and like injuries;

   d. Punitive damages to punish Defendant and to deter Defendant and others from like conduct under Counts I-III;

e. An injunction prohibiting Defendant from retaliating against Mr. Burks or engaging in any conduct toward him that violates Title VII and/or the PHRA;

f. Reasonable attorneys' fees and costs; and

g. Such other legal or equitable relief which this Court finds just and proper.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157

100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 230-8436

Attorney for Plaintiff